UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CYNTHIA AUSTIN,<br><br>    Plaintiff,<br><br>        v.<br><br>ALTON CASINO, LLC, d/b/a Argosy Casino Alton,<br><br>    Defendant. | Case No. 14-cv-1258-JPG-PMF |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Alton Casino, LLC's ("Casino") motion for summary judgment (Doc. 23). Plaintiff Cynthia Austin has responded to the motion (Doc. 24).

**I.    Summary Judgment Standard**.

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways. It may present

evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

**II.	Facts**

Construing all evidence and drawing all reasonable inferences in Austin's favor, the evidence established the following relevant facts.

On the evening of October 19, 2012, Austin slipped and fell in the first floor women's bathroom of the Casino. That night, Nancy Steele was employed by the Casino as a housekeeper. Steele's responsibilities that evening were to clean the first floor of the Casino, including the

women's bathroom on the first floor.  She would spend about ten to fifteen minutes cleaning the bathroom, then spend about fifteen to twenty minutes cleaning other areas of the first floor and outside areas before returning to clean the bathroom again.

Shortly before 10:30 p.m. on the evening in question,[1] Steele cleaned the bathroom, including wiping the sinks and the surrounding counter, refilling the toilet paper, mopping around the sinks and toilets with a dry or damp mop (without water) and spray cleaner, wiping down the toilets and cleaning the mirrors.  Steele saw no spills on the floor at that time and did not mop any areas of the bathroom, such as the area around the wall by the entrance to the bathroom, other than around the sinks and toilets.  At 10:30 p.m., she left to clean the rest of the first floor.

Between 10:30 p.m. and 10:45 p.m., Austin, who was patronizing the Casino that evening, entered the women's bathroom on the first floor.  She did not notice any liquid on the bathroom floor, but on her way around the wall by the entrance to the bathroom, she slipped on a puddle of a wet substance on the floor and fell.  During her fall, she hit the wall and the floor, injuring herself and getting her clothes wet from the wet substance.  Security guard Carol Ford received a call at

---

[1] There is some confusing testimony about the cleaning activities in the women's bathroom before Austin's fall.  Steele first testified in her deposition that she cleaned the women's bathroom and left it at 9:30 p.m. and then learned Austin had fallen ten to twenty minutes later.   Later, when she considered the Casino's accident report indicating that Austin fell around 10:40 p.m., Steele's recollection was refreshed and she explained that the cleaning shortly before the fall occurred around 10:30 p.m., not 9:30 p.m.  Despite these inconsistencies in the time Steele cleaned the women's bathroom immediately prior to Austin's fall, throughout her testimony, she consistently stated that she cleaned the bathroom at 9:30 p.m. and at 10:30 p.m., that she found Austin after her fall ten to twenty minutes after she had finished cleaning the bathroom, that she did not mop in the area where Austin fell before she fell either during the 9:30 p.m. or the 10:30 p.m. cleaning, but that she mopped spots of water up from the fall area only after Austin fell.  Austin herself testified that she could not remember the time but believed her accident was earlier in the day.  The discrepancy over the exact time of the cleaning and fall is immaterial.  The evidence and the reasonable inferences that can be drawn from it show, however, that Austin's fall occurred, ten to twenty minutes after Steele cleaned the bathroom.

3

approximately 10:45 p.m. that a patron had fallen in the women's bathroom so she reported to the scene, investigated, and eventually completed an accident report.

When Steele was heading back to the bathroom ten to twenty minutes after the 10:30 p.m. cleaning, a man informed her that a woman had fallen in the bathroom. Steele found Austin sitting on Steele's chair in the bathroom, so Steele called security on her radio. Austin told Steele she had slipped on a wet substance on the bathroom floor. The area where Austin indicated she fell was away from the area Steele had dry/damp mopped shortly before 10:30 p.m. Steele then looked and saw what looked like water on the floor in the area where Austin had fallen, so she put out a sign to warn of a wet floor, mopped the substance up, and shut the bathroom down.

In October 2014, Austin filed this lawsuit against the Casino in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois. She alleges a cause of action for negligence (Count I), vicarious liability (Count II) and negligent hiring and retention (Count III). The Casino then removed the case based on diversity of citizenship between the parties.

The Casino now moves for summary judgment arguing that Austin cannot establish an essential element of her claim for negligence: that the defendant breached its duty of care because it either caused or had actual or constructive notice of the liquid on the bathroom floor before Austin's fall. In response, Austin argues there is a genuine issues of material fact about whether the Casino or an agent of the Casino placed the wet substance on the floor and whether the Casino constructively knew the wet substance was there.

**III.    Analysis**.

"It is, of course, well established that, as a general matter, a district court exercising jurisdiction because the parties are of diverse citizenship must apply state substantive law and

federal procedural law." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). Thus, this Court applies the federal standard for summary judgment but Illinois law with regard to the negligence claim at issue.

To prevail in a cause of action for negligence, the plaintiff must show the defendant owed her a duty of care, the defendant breached that duty and the breach proximately caused injury. *See Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1053 (Ill. 2006). With respect to the duty element, a special relationship exists between a business and those it invites onto its property for business purposes. That special relationship may give rise to "an affirmative duty to aid or protect another against unreasonable risk of physical harm." *Id.* at 1058; *accord Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008); *Peterson v. Wal-Mart Stores, Inc.*, 241 F.3d 603, 604 (7th Cir. 2001).

A common hazardous condition encountered in a business is a spill on the floor. Where there is heavy patron traffic, there is a significant danger that spills caused by employees and/or patrons can precipitate an injurious fall. *Peterson*, 241 F.3d at 604. "The [business's] duty is not merely to prevent careless spillage by its employees but also to be on the lookout for spillage by whomever caused and to clean it up promptly." *Id.* Accordingly, a business can be liable for a patron's slipping on a spilled substance if:

> (1) the substance was placed there by the negligence of the proprietor, or (2) his servant knew of its presence, or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, *i.e.*, the proprietor had constructive notice of the substance.

*Hayes v. Bailey*, 400 N.E.2d 544, 546 (Ill. App. Ct. 1980); *see Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988). The Court addresses each of these theories of liability in turn.

A.  Substance Placed by Defendant

In response, Austin argues that there is evidence from which a reasonable jury could conclude the substance on which she slipped was placed on the bathroom floor by Steele or another agent of the Casino. In support of her position, she cites *Lane v. Hardee's Food Systems, Inc.*, 184 F.3d 705 (7th Cir. 1999). In *Lane*, the plaintiff slipped in a puddle of standing water near a drain in a Hardee's restaurant bathroom and fell. *Id.* at 706. The Court of Appeals held that there was a genuine issue of fact about whether the defendant created the spill because the plaintiff was able to "1) show that the foreign material was related to the defendant's business, and 2) produce some evidence that makes it more likely than not that the defendant was responsible for its existence." *Id.* at 707 (citing *Donoho v. O'Connell's Inc.*, 148 N.E.2d 434, 439 (Ill. 1958)). The *Lane* court had little trouble finding that water in a business's bathroom was related to the business. *Lane*, 184 F.3d at 708. It further found that evidence that a Hardee's employee may have mopped the floor shortly before the plaintiff's fall made it possible that a jury could find Hardee's was responsible for the water on the floor. *Id.* at 708-09.

Austin is correct that under Illinois law, a patron can prove a defendant is negligent if it is responsible for creating a spill on its premises that causes the plaintiff injury. *See Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014) (to withstand summary judgment, plaintiff "needed to present some evidence showing that the substance was more likely placed on the premises through [the business's] negligence rather than a customer's"). To prove the business is responsible for a spill,

> Illinois courts have required the plaintiff to (1) show that the foreign substance was related to the defendant's business and (2) "offer[ ] some further evidence, direct or circumstantial, however slight, such as the location of the substance or the business practices of the defendant, from which it could be inferred that it was more likely

6

that defendant or his servants, rather than a customer, dropped the substance on the premises. . . . "

*Id.* at 649-50 (quoting *Donoho,* 148 N.E.2d at 439). Nevertheless, there must be something more than pure speculation to show the business or one of its agents caused the spill. *Zuppardi*, 770 F.3d at 650.

In this case, there is evidence that the spill on the bathroom floor was water, which would be related to the Casino's provision of bathroom facilities to its patrons. However, there is nothing more than speculation to show that the Casino was responsible for the spill. Austin did not see the spill until after she fell and could not tell from its appearance what had caused it. On the other hand, despite Austin's counsel's clear efforts to confuse her into testifying differently,[2]

---

[2] Steele testified at the beginning of her deposition that she did not hear or comprehend well. Plaintiff's counsel then commenced a game of "gotcha" by asking vague or misleading questions to entrap Steele into contradicting her own testimony. For example, Steele's deposition contained the following exchanges:

> Q [by Plaintiff's counsel]    Okay. Then [the accident report] says I did not mop the floor in the area where the lady fell.
> A    Right.  It was clean.
> Q    Now-- it was clean.  Now, my question is, does that mean before she fell or after she fell you didn't mop the floor?
> A    I didn't -- I did not mop it over there, period.
> Q    Okay.
> A    None.  I mean, where she -- where she fall at, how did the water get over there?
> Q    Okay.  But after she fell, after you were in there and you saw --
> A    Yeah.  Yeah.
> Q    --the spots, you did clean up?
> A    Then I mopped.  Yeah, I mopped it then.

Steele Dep. 55:11-25 (Doc. 23-3), and

> Q [by Plaintiff's counsel]:    . . . . When you were in there cleaning at 10:30 and you told us that you damp mopped in front of the sinks and the toilets--
> A    Uh-huh.
> Q    -- did you damp mop anywhere else in the restroom?

7

Steele testified that she did not mop the area of the wet substance during either the 9:30 p.m. or 10:30 p.m. cleaning and that she only mopped in the area where Austin fell *after* the fall. And even when she mopped other areas, she used a dry or damp mop without using water. Further, Steele consistently testified that the bathroom floor was clean and dry when she left it at 10:30 p.m., shortly before Austin fell. Thus, unlike the situation in *Lane*, no evidence whatsoever

---

    A     No. That's – that's it.
    Q     Did you put anything on the floor in the area where plaintiff fell --
    A     No.
    Q     -- when you were in there at 10:30?
    A     No.

Steele Dep. 52:1-12 (Doc. 23-3). Several pages later, despite the answers above, Austin's counsel attempted to muddy the waters by asking questions that were vague as to the relevant time:

    Q [by Plaintiff's counsel     Okay. And [the accident report] also says I did not mop the floor in the area where she fell, but you actually did, right?
    A     No. After-- after the spots there.
    \* \* \*
    Q     . . . . But the area where she said she fell, did you mop that area?
    A     No. Where she fall at, no, I did not mop it over there.
    Q     So you saw water on the floor and you left it there?
    A     No. Okay. Yeah, I did mop it after she told me she fall and it got spots there.
    Q     Okay. But this says I did not mop the floor, but you did?
    A     Yeah.

Steele Dep. 54:3-25 (Doc. 23-3). The Casino's counsel was able to ask questions that quickly clarified any confusing testimony elicited by Austin's counsel:

    Q     Did you mop the floor in the area where she fell before she fell?
    A     Before she fall?
    Q     Before she fell.
    A     No.
    Q     Okay. Did you mop the floor in the area where she fell--
    A     Yes.
    Q     -- after-- wait. After she fell?
    A     After she fall? Yes, I mop it then.

Steele Dep. 56:15-24 (Doc. 23-3).

suggests the wet substance was a result of Steele's mopping the floor. Additionally, the spill occurred in a bathroom that was open to all patrons of the Casino, not in an area where Casino employees were more likely than Casino patrons to be – and to spill something wet. There is simply no evidence, direct or circumstantial, that would make it more likely that a Casino employee was responsible for the spill as opposed to a Casino patron. For these reasons, no reasonable jury could conclude that the Casino was responsible for the spill in the bathroom, and the Court must now turn to the Casino's knowledge of a spill caused by a third-party.

   B.  Actual Knowledge of Spill

  The Casino asserts it had no knowledge of the wet substance on the bathroom floor before the accident, noting that no evidence shows any Casino employee knew of the spill or that any Casino patron reported the spill before Austin's fall. Austin does not respond to this argument. The Court construes that failure as a concession that the Casino's argument in this regard has merit. Indeed, there is no evidence from which a reasonable jury could find the Casino or any of its agents knew of the wet substance on the bathroom floor before Austin's fall.

   C.  Constructive Knowledge of Spill

  The Casino argues the wet substance on the bathroom floor was there no more than ten minutes, an insufficient length of time so that, in the exercise of ordinary care, the Casino should have discovered the spill. It points to Steele's testimony that the floor was clean at 10:30 p.m. and Ford's affidavit stating she received a call to go to the restroom at 10:45 p.m. to respond to a report that a patron had fallen there at approximately 10:40 p.m. It argues these pieces of evidence, put together, establish that the spill existed for ten minutes at the most, and that the Casino should not have been expected to discover the spill in that short of a time period.

9

In response, Austin argues that whether a length of time is reasonable for a defendant to discover a spill is a question for the jury to decide considering all the circumstances of the particular case. She further argues the wet substance could have been on the floor for as much as twenty-five minutes since Steele took up to fifteen minutes to complete the restroom cleaning.

When a customer slips on a spill that the business neither created nor knew about, the critical question is whether the business *should have known* about the spill – that is, whether it had constructive notice of the spill – such that its failure to detect it and clean it up or warn about it breached its duty of care. *See Reid v. Kohl's Dep't Stores, Inc.,* 545 F.3d 479, 481-82 (7th Cir. 2008); *Culli v. Marathon Petroleum Co.,* 862 F.2d 119, 123 (7th Cir. 1988). Of course, a business is not required to continuously patrol its premises on the lookout for spills, but it may be required to frequently and carefully patrol them, especially in areas where spills are likely. *Peterson v. Wal-Mart Stores, Inc.,* 241 F.3d 603, 60405 (7th Cir. 2001) (citing *Hresil v. Sears, Roebuck & Co.,* 403 N.E.2d 678, 680 (Ill. App. Ct. 1980)).

To determine whether constructive notice is established because of the presence of the spill for a period of time, the Court examines both the length of time the spill existed and the surrounding circumstances. *Reid,* 545 F.3d at 843; *Peterson,* 241 F.3d at 605. There is no bright-line rule on the amount of time adequate to provide constructive notice, and the determination depends on the circumstances of each incident. *Reid,* 545 F.3d at 843. However, "it is incumbent upon the plaintiff to establish that the foreign substance was on the floor long enough to constitute constructive notice to the proprietor." *Hayes v. Bailey*, 400 N.E.2d 544, 546 (Ill. App. Ct. 1980). Where the plaintiff presents no evidence as to how long the spill existed before her fall, there is no genuine issue of material fact for a jury to decide. *Id.* ("In the instant

case, there is no evidence at all as to how long the water had been on the floor of the restroom. . . . In the absence of any evidence tending to show constructive notice we believe it was proper to not submit the case to the jury and to direct a verdict for the defendant."); *see Olinger v. Great Atl. & Pac. Tea Co.*, 173 N.E.2d 443, 446 (Ill. 1961) ("even where there is proof that the foreign substance was related to defendant's business, but no further evidence is offered other than the presence of the substance and the occurrence of the injury, defendant is entitled to a directed verdict, such evidence being insufficient to support the necessary inference."); *Tomczak v. Planetsphere, Inc.*, 735 N.E.2d 662, 668 (Ill. App. Ct. 2000) (affirming summary judgment for defendant where plaintiff had presented no evidence of the time element to establish constructive notice); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 970 (N.D. Ill. 2007) (where plaintiff "has no idea how long the substance that allegedly caused her fall – *i.e.*, some grapes or undefined wetness – was on the floor for purposes of the constructive notice/negligence analysis," plaintiff "does not have a triable negligence case against a storeowner").

  In this case, Austin has presented no evidence of how long the wet substance was on the bathroom floor before she slipped on it. Her contention that a jury could find it was there for twenty-five minutes is unfounded since there is no evidence the substance was on the floor when Steele performed the 10:30 p.m. cleaning. In fact, there is no testimony from *any* witness who saw the substance before Austin's fall or any other similar evidence. Consequently, there is no basis for a jury to conclude the substance had been there long enough that the Casino should have discovered it and then cleaned it or warned about it. Without such evidence there is no genuine issue of material fact for a jury to decide, and the Casino is entitled to summary judgment.

## IV. Conclusion.

Because the Casino has pointed to an absence of evidence of its breach of a duty, and Austin has failed to present any evidence to support that essential element of her negligence claim, the Casino is entitled to summary judgment on Austin's negligence claim in Count I. Because her vicarious liability claim in Count II and negligent hiring and retention claim in Count III are derivative of her negligence claim, the Casino is entitled to summary judgment on those counts as well. Accordingly, the Court **GRANTS** the Casino's motion for summary judgment (Doc. 23) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:** September 7, 2016

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**